IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ESTATE OF MARTY LYNN RAINEY, deceased, DANIEL BREIGEL, Personal Representative | ) JURY TRIAL DEMANDED )<br>) |
| | ) |
| LYNN MARIE RAINEY, Class One Beneficiary and for All Other Class One Beneficiaries of MARTY LYNN RAINEY, | )<br>)<br>) |
| | ) Case No:1:17CV00096RLW |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| STE. GENEVIEVE COUNTY, SHERIFF GARY STOLZER, JAIL ADMINISTRATOR, LT., ANDREW JOHNSON, DEPUTY CPL. DUSTIN R. EDWARDS, DEPUTY CPL. KRISTEN CARROW, DEPUTY CPL., RYAN RICHIE, DEPUTY CPL. CURTIS WEINHOLD, DEPUTY DEVON HATTENHAUER, DEPUTY STEPHANIE MEMHARDT, DEPUTY KYLE BURT DEPUTY ABIGAIL BREWER, DEPUTY AMBER VONDERHAAIR, DEPUTY ANTHONY BROWN, DEPUTY DAN MCCAFFREY, DEPUTY ALEX KETNER DEPUTY GABE PUHSE, DEPUTY NICK EMS, DEPUTY MIKE SANSOUCIE DEPUTY RICHARD MAYFIELD, C.O. ANTHONY DELRASARIO, C.O. NORMA ELLISON, C.O. LOREN GUGEL. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

1

## SECOND AMENDED COMPLAINT

COME NOW the Plaintiffs by and through the undersigned counsel, and for their cause of action against the Defendants, state further as follows:

## INTRODUCTORY STATEMENT

1. This is a civil action seeking money damages against the Defendants, Ste. Genevieve County, Sheriff Gary Stolzer, Deputy Cpl. Andrew Johnson, Deputy Cpl. Dustin R. Edwards and Deputy Cpl. Kristen Carrow, Deputy Cpl. Ryan Richie, Deputy Cpl. Curtis Weinhold who were and at all times relevant herein, the government entities responsible for training and supervising law enforcement officers; and, Deputy Devon Hattenhauer, Deputy Stephanie Memhardt, Deputy Kyle Burt, Deputy Abigail Brewer, Deputy Amber VonderHaar, Deputy Dan McCaffrey, Deputy Anthony Brown, Deputy Alex Ketner, Deputy, Gabe Puhse, Deputy Mike Sansoucie, Deputy Nick Ems, Deputy Richard Mayfield, C.O. Loren Gugel, C.O. Normal Ellison and C.O. Anthony DelRasario; all of the aforementioned Defendants acting under their authority as officers of the Ste. Genevieve Sheriff's Office, for committing acts under the color of law, which deprived the decedent, Marty Lynn Rainey, of his rights secured under the Constitution and law of the United States, including his right to be protected from known risks of suicide, to be given access to medical and mental care and protected from deliberate indifference to substantial

2

medical and mental health needs, as well as due process, all as guaranteed under the Fourteenth Amendment and for state law violations under the Missouri Wrongful Death Statute.

## JURISDICTION

2.  This action is brought pursuant to 42 U.S.C §1983, 1985 & 1988 and the Fourteenth Amendment to the United States Constitution together with supplemental state law claims.

3.  The Court has jurisdiction over the action pursuant to 42 U.S.C §1983, 28 U.S. C. §§1331 and 1343. This Court has jurisdiction over the supplemental state law claims pursuant to 28 U.S.C. 1367 (b).

4.  The Plaintiff, Lynn Marie Rainey, is a natural person who is entitled to bring this action for wrongful death pursuant to RSMo §537.080 as she is a Class One member under the wrongful death statute acting individually and for other members of the Class. The Defendants reside within the jurisdictional limits of the United State District Court for the Eastern District of Missouri and more specifically within the Southern Division for that court.

5.  Plaintiff, Estate of Marty Lynn Rainey, was opened in Franklin County, Missouri which is within the jurisdictional limits of the United States District Court for the Eastern District of Missouri.

6.  The constitutional violations alleged and the events described

happened in Ste. Genevieve County, Missouri, which is within the geographic jurisdiction encompassed by this Honorable Court.

7. The Plaintiffs are persons aggrieved by a violation of the civil rights of Marty Lynn Rainey, deceased, which violations are made actionable under 42 U.S.C. §§1983 and 1985.

## PARTIES

8. The Plaintiff, Lynn Marie Rainey, is a natural person, citizen and a resident of the United States with Lynn Marie Rainey being the surviving spouse of the decedent. Other Class One members are Katie Morin, natural daughter of decedent and Eric Rainey, natural son of decedent.

9. The Plaintiff Estate of Marty Lynn Rainey is an estate duly established pursuant to the laws of Missouri, which proceedings were opened in Franklin County, Missouri within the geographic area of the U.S. District Court for the Eastern District of Missouri.

10. At all times referenced to herein, the defendant, Ste. Genevieve County, was a political subdivision of the State of Missouri.

11. Plaintiffs sue defendant the County of Ste. Genevieve which owned and operated the Ste. Genevieve County Jail and was responsible for providing for the training and supervision of the corrections officers at the jail.

12. That at all times referenced herein, Defendant Ste. Genevieve

4

County acted under the color of law, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and Ste. Genevieve County, pursuant to its authority as a political subdivision of Missouri, it may be served in care of the current county commissioners, including Presiding Commissioner Garry Nelson.

13. That all times referenced herein, Defendant Sheriff Gary Stolzer was the duly elected Sheriff of Ste. Genevieve County, Missouri. He was the county official in charge of the operations of the Ste. Genevieve County Jail and responsible for providing training and supervision to the employees of his department operating in said jail.

14. At all times referenced herein, the Defendant Gary Stolzer, Correction Officers Dustin R. Edwards, Kristen Carrow and Andrew Johnson, Deputy Cpl. Ryan Richie, Deputy Cpl. Curtis Weinhold, together with Deputy Devon Hattenhauer, Deputy Stephanie Memhardt, Deputy Kyle Burt, Deputy Abigail Brewer, Deputy Dustin Edwards, Deputy Amber VonderHaar, Deputy Dan McCaffrey, Deputy Anthony Brown, Deputy Alex Ketner, Deputy, Gabe Puhse, Deputy Mike Sansoucie, Deputy Nick Ems, Deputy Richard Mayfield, C.O. Loren Gugel, C.O. Normal Ellison and C.O. Anthony DelRasario were the duly appointed Correction Officers/Deputies of Ste. Genevieve County, Missouri.

15. Plaintiffs sue Sheriff Stolzer in his individual capacity.

16.   At all times referenced to herein, Defendant Sheriff Stolzer acted under the color of law, statutes, ordinances, regulations, policies, customs and usages of the States of Missouri and Ste. Genevieve County Sheriff's Office pursuant to his authority as the duly appointed Sheriff for Ste. Genevieve County, Missouri.

17.   Plaintiffs sue Defendant Edwards in his individual capacity.

18.   At all times referenced to herein, Defendant Edwards acted under the color of law, statutes, ordinances, regulations, policies, customs and usages of the States of Missouri and Ste. Genevieve County Sheriff's Office pursuant to his authority as a duly appointed Corrections Officer for Ste. Genevieve County, Missouri.

19.   At all times referenced herein, the Defendant Correction Officer Kristen Carrow was a duly appointed Corrections Officer of Ste. Genevieve County, Missouri.

20.   Plaintiffs sue Defendant Carrow in her individual capacity.

21.   At all times referenced to herein, Defendant Carrow acted under the color of law, statutes, ordinances, regulations, policies, customs and usages of the States of Missouri and Ste. Genevieve County Sheriff's Office pursuant to her authority as a duly appointed Corrections Officer for Ste. Genevieve County, Missouri.

22.   At all times referenced herein, the Defendant Andrew Johnson

6

(hereinafter referred to as "Defendant Johnson") was the duly appointed Correction Officer of Ste. Genevieve County, Missouri.

23. Plaintiffs sue Defendant Johnson in his individual capacity.

24. At all times referenced to herein, Defendant Johnson acted under the color of law, statutes, ordinances, regulations, policies, customs and usages of the States of Missouri and Ste. Genevieve County Sheriff's Office pursuant to his authority as a duly appointed Correction Officer of Ste. Genevieve County, Missouri.

25. At all times referenced to herein, Defendant Ste. Genevieve County acted under the color of law, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and Ste. Genevieve County, pursuant to its authority as a political subdivision of Missouri, it may be served in care of the current county Presiding Commissioner, Garry Nelson.

## FACTS

26. On March 4, 2016 Marty Lynn Rainey was processed and incarcerated in the Ste. Genevieve County Jail.

27. At the request of the U.S. Marshal's service Marty Lynn Rainey was segregated/isolated in a holding cell at said jail.

28. Upon his arrival at the Ste. Genevieve Jail on March 4, 2016, Marty Lynn Rainey was asked a number of questions by Corporal

Dustin Edwards, including a question regarding medications. Marty

Rainey advised Corporal Dustin Edwards that he was taking

medications for Post-Traumatic Stress Disorder. Further, a notation

was made by Defendant Edwards that Rainey suffered from a "mental

illness".

29. Marty Lynn Rainey had previously been employed with

the Gasconade County Sheriff's Office. A decision was made by the jail

staff to place him in extreme isolation in a holding cell for his

protection. The holding cell was monitored by a camera which

included audio.

30. According to the Ste. Genevieve County Sheriff's Office Policy

and Procedure Manual (hereinafter referred to "Policy") Marty Lynn

Rainey's status in isolation should have been reviewed within 72 hours of

his booking/placement into the cell.

31. Said Policy also requires that an inmate in a holding cell have

access to recreation.

32. The Policy also calls for an inmate in isolation to be examined by

a medical professional a minimum of 3 times per week.

33. The Policy also requires officers to maintain a log for any inmate

housed in the Holding Cell/Segregation Unit, documenting his meals, times

in and out of the cell, medical visits and recreation times.

34.  Said Policy also requires a formal "population count" of each inmate a minimum of at least 3 times a day; and an "informal count" each one half hour.

35.  Said Policy also requires that an individual in a holding cell be reviewed weekly by medical staff and facility supervision as to his overall status.

36.  The Policy also has a specific section on Suicide Prevention which mandates training for all of the jail staff, an evaluation of the suicidal inmate by health care professionals, and a 15 minute observation log documenting direct observation.

37.  Said Policy also contains a directive (Directive #1) regarding Jail Checks and requires that Correction's Officers shake and rattle every cell door to make sure it was secure.

38.  Defendant Edwards failed to make an adequate assessment/screening on Marty Lynn Rainey as to his physical and mental health after he was taken into custody at Defendants' jail.

39.  Defendant Edwards did not ask Marty Lynn Rainey during their initial consultation at the Ste. Genevieve County Jail what specific mental health medications he was taking; whether he was currently feeling depressed; whether he had recently tried to commit suicide.

40.  Defendant Edwards did not seek a consultation with a medical

9

correction officer or correctional nurse on Marty Lynn Rainey. Defendant Edwards did not enter a request for a monitoring order for Marty Lynn Rainey.

41. That all times referenced herein, Defendant Sheriff Gary Stolzer was the duly elected Sheriff of Ste. Genevieve County, Missouri. He was the county official in charge of the operations of the Ste. Genevieve County Jail and responsible for providing training and supervision to the employees of his department operating in said jail and implementing and following the Safety Rules of the Jail Manual.

42. At all times herein Andrew Johnson was the Jail Administrator for the Ste. Genevieve County Jail.

43. Deputy Devon Hattenhauer, Deputy Stephanie Memhardt, Deputy Kyle Burt, Deputy Abigail Brewer, Deputy Amber VonderHaar, Deputy Dan McCaffrey, Deputy Anthony Brown, Deputy Alex Ketner, Deputy Gabe Pushe, Deputy Mike Sansoucie, Deputy Nick Ems and Deputy Richard Mayfield; Corrections Officer Anthony DelRasario, Corrections Officer Norma Ellison and Corrections Officer Loren Gugel (hereinafter referred as "On Duty Deputies and C.O.'s) all were on duty at the Ste. Genevieve County Jail during the time period when Marty Lynn Rainey was housed in said facility.

44. At all times herein Sheriff Stolzer, Deputies Edwards , Carrow,

10

Richie and Weinhold were shift supervisors/supervisors. Defendants Stolzer, Johnson, Carrow, Edwards, Richie and Weinhold together with the other named On Duty Deputies and C.O's knew or should have known that Marty Lynn Rainey needed medical/mental care, was entitled to be evaluated and treated for his known mental health conditions, and failed to provide for such care.

45.  Defendants Stolzer, Johnson, Carrow, Richie, Weinhold and Edwards together with the other named On Duty Deputies and C.O.'s knew that Marty Lynn Rainey was entitled to exercise and recreation but failed or refused to allow such freedom, thus causing extreme isolation which is a known risk factor in jail suicide.

46.  Defendants Stolzer, Johnson, Carrow, Richie, Weinhold and Edwards together with the other named On Duty Deputies and C.O.'s in violation of the Jail Policy continued to allow Marty Lynn Rainey to languish in extreme isolation without any form of monitoring/observation or treatment of his known conditions, ignored the risk of increasing depression, hopelessness, and failed to provide a safe environment.

47.  Defendants Stolzer, Johnson, Carrow, Richie, Weinhold and Edwards together with the other named On Duty Deputies and C.O.'s knew or should have known that Marty Lynn Rainey was at risk for suicide in that he was a former law enforcement officer, was under a doctor's care for PTSD

11

and was placed in extreme isolation with no access to other inmates or staff, all of which increased his risk for suicide.

48.  Defendants Stolzer, Johnson, Carrow, Richie, Weinhold and Edwards together with the other named On Duty Deputies and C. O.'s failed to monitor Marty Lynn Rainey despite his risk for self harm/suicide despite having visual and audio observation devices available to them, thus increasing his opportunity to engage in self harm/suicide.

49.  Defendants Stolzer, Johnson, Carrow, Richie, Weinhold and Edwards together with the other named On Duty Deputies and C.O.'s allowed Marty Lynn Rainey to turn off the lights in his cell for extended periods of time which inhibited/interfered with their ability to monitor his activities, thus increasing his chances of self harm/suicide.

50.  Defendants Stolzer, Johnson, Carrow, Richie, Weinhold and Edwards together with the other named On Duty Deputies and C.O.'s knew or should have known that a pre-trial report by the Federal pre-trial official stated that Marty Lynn Rainey was a suicide risk because of his former status as a law enforcement officer. The pre-trial detention report included that because of his risk of suicide he be confined to the Ste. Genevieve Jail in a segregation unit away from the other inmates.

51.  Defendant Ste. Genevieve County and Defendant Sheriff Gary Stolzer are obligated to provide adequate training and supervision to its

correction officers.

52. Defendant Ste. Genevieve County and Defendant Gary Stolzer are obligated to provide a sufficient number of jailers to be capable of carrying out its written Jail Policy.

53. Defendant Ste. Genevieve County and Defendant Sheriff Gary Stolzer had insufficient policies as well as inadequate training and supervision, all of which contributed to substandard medical and mental health care for inmates incarcerated at Ste. Genevieve County Jail.

54. A pre-trial detainee's right to be given access to medical care and provide adequate medical care has been obvious since at least 1976.

55. Despite the Policy Defendants Johnson Carrow Richie, Weinhold and Edwards along with other named On Duty Deputies and C.O.s failed to conduct visual checks on Marty Lynn Rainey in his holding cell increasing his risk for self harm.

56. Defendants Stolzer, Johnson, Carrow, Richie, Weinhold and Edwards together with the other named On Duty Deputies and C.O.'s knew or should have known that spending 21 days in extreme isolation increased the chances of self harm for Marty Lynn Rainey.

57. That on Friday, March 25, 2016 at approximately 4:45 p.m. Marty Lynn Rainey hung himself with his bed sheet. His body was discovered some 14 ½ hours later at approximately 7:25 a.m.

13

58. Suicide is recognized as a serious medical need and that term is frequently used within civil rights litigation involving deliberate indifference.

59. The deceased, Marty Lynn Rainey, had a clearly established Eighth Amendment and Fourteenth Amendment right to be protected from the known risk of suicide.

60. Defendants, Stolzer, Johnson, Carrow, Richie, Weinhold and Edwards together with the other named On Duty Deputies and C.O.'s acted with deliberate indifference to the known risk of suicide by:

    a. failing to provide proper screening and follow-up treatment for Marty Lynn Rainey;

    b. failing to place Marty Lynn Rainey on suicide precautions/watch;

    c. failing to provide a safe environment for Marty Lynn Rainey;

    d. failing to obtain orders to monitor Marty Lynn Rainey;

    e. failing to provide/maintain regular observations of Marty Lynn

    f. failing to provide Marty Lynn Rainey with his constitutional right to exercise and recreation;

    g. failing to provide adequate lighting conditions to monitor Marty Lynn Rainey, who had known risk factors;

    h. failing to provide Marty Lynn Rainey with weekly medical evaluations as mandated by jail policy;

    i. failing to provide Marty Lynn Rainey with an examination by a medical professional at least 3 times per week as mandated by jail policy

61. A pretrial detainee's right under the Fourteenth Amendment to

be protected from the known risk of suicide has been established within the Eighth Circuit since at least 2000.

62.  By entirely separate case law, since 2000, there has been no question but that being suicidal constitutes a serious medical need.

63.  Regardless of the setting, whether clinical or correctional, when an individual is identified as being potentially suicidal, the only acceptable standard of care is to provide direct visual monitoring with observations occurring intervals not to exceed 15 minutes. These observations should be documented in a log and maintained as part of the inmate record in the jail.

64.  Marty Lynn Rainey suffered pain and decline in quality of his life following his incarceration into the Ste. Genevieve Jail.

65.  Marty Lynn Rainey suffered great psychological anguish during his incarceration in the Ste. Genevieve County Jail.

66.  Marty Lynn Rainey suffered great physical anguish during both his incarceration and more particularly during his strangulation.

67.  Plaintiff Estate and his spouse, Lynn Marie Rainey, suffered pecuniary losses, including funeral expenses.

68.  Plaintiffs all individually suffered from the needless and untimely loss of services, companionship, comfort, instruction, guidance, counsel training and support of Marty Lynn Rainey.

## COUNT I

COME NOW the Plaintiffs and for their cause of action in Count I against Defendants Stolzer, Edwards, Carrow, Richie, Weinhold and Johnson together with other named On Duty Deputies and C.O.'s state as follows:

69. The Plaintiffs reincorporate by reference here Paragraphs 1-68 of this Complaint.

70. At all times relevant to this Complaint, Defendants Stolzer, Edwards, Carrow, Richie, Weinhold and Johnson together with other named On Duty Deputies and C.O.'s were acting under the color of law and under their authority as law enforcement officers.

71. Marty Lynn Rainey had a clearly established constitutional right to be free from cruel and unusual punishment, to have serious medical needs attended to by the Defendants, and to not be deprived of life, liberty and the pursuit of happiness without due process of law.

72. At the time that Marty Lynn Rainey was taken into custody at the Ste. Genevieve County Jail, he had serious medical needs, including the risk of suicide.

73. Defendants Stolzer, Edwards, Carrow, Richie, Weinhold and Johnson together with other named On Duty Deputies and C.O.'s were aware; at the time Marty Lynn Rainey was taken into custody, of Marty

Lynn Rainey's constitutional rights and were also aware that he had serious medical needs that contributed to his risk for suicide to wit:

a. the Defendants knew or should have known that, at the time of the booking, Marty Lynn Rainey had a positive screening for mental illness, specifically Post-Traumatic Stress Disorder and that he was taking medications for that illness.

b. Marty Lynn Rainey was white, middle aged, and a working father

c. the Defendants knew or should have known that Marty Lynn Rainey was a former law enforcement officer, formerly employed in Gasconade County and several municipalities;

d. the Defendants knew or should have known that housing Marty Lynn Rainey in extreme isolation for such a long period of time—21 days—would increase his depression, despair and increase the risk of self harm;

e. the Defendants knew or should have known that being a former law enforcement officer increased Marty Lynn Rainey's risk for suicide;

f. the Defendants knew or should have known to maintain a log of all meals, hours out of the cell, amount of recreation time allowed and medical visits;

g. the Defendants knew or should have known that Marty Lynn Rainey was entitled to a minimum of one hour of recreation time outside of the holding cell but failed to provide him with such;

h. the Defendants knew or should have known that Marty Lynn Rainey was entitled to be examined by a medical professional a minimum of three (3) times per week, and that such care was not provided;

i. the Defendants repeatedly violated jail policy and violated Marty Lynn Rainey's rights, by failing to conduct physical face-to-face head counts;

j. the Defendants repeatedly failed to provide adequate monitoring of the holding cell in which Marty Lynn Rainey was housed by allowing him to keep the lights off so that such monitoring was impossible;

17

74. Defendants Stolzer, Edwards, Carrow, Richie, Weinhold and Johnson together with other named On Duty Deputies and C.O.'s knew or should have known, as of the time that Marty Lynn Rainey was taken into their custody, that their failure to address Marty Lynn Rainey's substantial medical needs including the risk of suicide created an excessive risk of harm to Marty Lynn Rainey's health and safety.

75. Defendants Stolzer, Edwards, Carrow, Richie, Weinhold and Johnson together with other named On Duty Deputies and C.O.'s were aware that their conduct, by failing to address Marty Rainey's substantial medical needs including the risk of suicide, was inappropriate in light of the substantial risk of harm to Marty Lynn Rainey's health and safety.

76. Defendants Stolzer, Edwards, Carrow, Richie, Weinhold and Johnson together with other named On Duty Deputies and C.O.'s knew or should have known that each day Marty Lynn Rainey was kept in extreme isolation increased his risk for depression, hopelessness and suicide but Defendants allowed him to remain in extreme isolation for 21 days leading up to his death.

77. Defendants Stolzer, Edwards, Carrow, Richie, Weinhold and Johnson together with other named On Duty Deputies and C.O.'s deliberately disregarded Marty Lynn Rainey's substantial medical needs including the risk of suicide.

18

78. As a direct and proximate result of Defendants Stolzer, Edwards, Carrow, Richie, Weinhold and Johnson's together with other named On Duty Deputies and C.O.'s deliberate disregard for Marty Lynn Rainey's substantial medical needs including the risk of suicide, Marty Lynn Rainey suffered emotional and physical anguish.

79. As a direct and proximate result of Defendants Stolzer, Edwards, Carrow, Richie, Weinhold and Johnson's together with other named On Duty Deputies and C.O.'s deliberate disregard for Marty Lynn Rainey's substantial medical needs including the risk of suicide, Plaintiffs have lost the care, companionship, services, comfort, instruction, guidance, counsel, training and support of Marty Lynn Rainey.

80. As a direct and proximate result of Defendants Stolzer, Edwards, Carrow, Richie, Weinhold and Johnson's together with other named On Duty Deputies and C.O.'s deliberate disregard for Marty Lynn Rainey's substantial medical needs including the risk of suicide, Plaintiff Estate incurred fees for funeral and burial expenses.

81. The acts of Defendants Stolzer, Edwards, Carrow, Richie, Weinhold and Johnson together with other named On Duty Deputies and C.O.'s as described above were intentional, wanton, malicious, reckless, oppressive and callously indifferent to Marty Lynn Rainey's rights, thus entitling Plaintiffs to an award of punitive damages against the Defendants.

82. If the Plaintiffs prevail and are awarded actual or nominal damages, they are entitled to an award of attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor against Defendants Stolzer, Edwards, Carrow, Richie, Weinhold and Johnson and the named On Duty Deputies and C.O.'s award them compensatory or nominal damages in an amount that is fair and reasonable, award them punitive damages, attorneys' fees, costs of suit, and any further relief the Court deems just and appropriate.

## COUNT II

COME NOW Plaintiffs and for Count II of their cause of action against Defendant Ste. Genevieve County and Defendant Gary Stolzer state as follows:

83. The Plaintiffs incorporate by reference hereto Paragraphs 1 through 82 of their Complaint.

84. Marty Lynn Rainey had a clearly established constitutional right to be free from cruel and unusual punishment, to have serious medical needs, including suicide risks, attended to by the Defendants, and to not be deprived of life, liberty or the pursuit of happiness without due process of law.

85. Defendant Ste. Genevieve County and Defendant Stolzer knew or

should have known that at the time he was taken into their custody, Marty

Lynn Rainey had serious medical needs including the risk of suicide, to wit:

a. Marty Lynn Rainey suffered from a mental illness and was prescribed medications for Post-Traumatic Stress Disorder (PTSD). He was not provided with these medications while he was in the care, custody and control of St. Genevieve County and was not free to obtain his own care;

b. Marty Lynn Rainey was white, middle aged and a working father and family man;

c. the Defendants knew or should have known that keeping Marty Lynn Rainey in extreme isolation would increase his depression, hopelessness and despair and raise his risk of suicide;

d. Marty Lynn Rainey was placed in extreme isolation which, per policy, required special management, including a log tracking all meals, time in and out of the cell, medical visits and recreation time;

e. the Defendants knew or should have known that the Policy required an examination by a medical professional at least three times per week.

f. the Defendants repeatedly violated jail policy by failing to conduct physical face-to-face head counts;

g. the Defendants failed to adequately monitor Marty Lynn Rainey in his holding cell by video camera and allowed him to turn his lights off in his cell so such monitoring would be impossible;

86. Defendant Ste. Genevieve County and Defendant Stolzer failed to

enact, maintain and enforce policies, procedures and practices to protect the

inmates, including Marty Lynn Rainey. Defendant Ste. Genevieve County

and Defendant Stolzer also failed to adequately train and supervise its staff

and employees to ensure that existing policies and procedures were

followed in order to protect the serious medical needs of inmates, including

21

risk of suicide, to wit:

a. Ste. Genevieve County and Defendant Stolzer failed to have appropriate working policies in place to safeguard the constitutional rights of those with whom their employees came into contact with;

b. Defendants Ste. Genevieve County and Defendant Stolzer to adequately train its staff and employees, including Defendants Edwards, Carrow and Johnson;

c. Ste. Genevieve County and Defendant Stolzer failed to adequately supervise its employees, including Defendants Edwards, Carrow and Johnson;

d. Ste. Genevieve County and Defendant Stolzer failed to have a policy in place for proper assessment of a suicidal inmate;

e. Ste. Genevieve County and Defendant Stolzer failed to have a policy in place to allow for the transfer, evaluation and proper treatment of a suicidal or potentially suicidal inmate;

f. Ste. Genevieve County and Defendant Stolzer failed to follow their own written policy regarding the review of any inmate placed in a holding cell within a 72 hours period;

g. Ste. Genevieve and Defendant Stolzer failed to allow Marty Lynn Rainey to have access to exercise and recreation;

h. St. Genevieve County and Defendant Stolzer violated their own written policy by failing to provide an examination by a qualified healthcare professional a minimum of three (3) times per week while he was in the holding cell;

i. Ste. Genevieve County and Defendant Stolzer failed to implement observation or suicide precautions despite the risk of being placed in extreme isolation;

j. Ste. Genevieve County and Defendant Stolzer failed to have an appropriate screening process for identifying a suicidal inmate or detainee;

k. Ste. Genevieve County and Defendant Stolzer failed to have an appropriate screening process for identifying the risk factors associated

with jail suicide, specifically those relating to the incarceration of former law enforcement officers;

l. Ste. Genevieve County and Defendant Stolzer failed to implement policies which would ensure adequate supervision of inmates housed in holding cells under conditions of extreme isolation;

m. Ste. Genevieve County failed and Defendant Stolzer to implement Jail Directive #1 regarding physical checks every two (2) hours whereby a corrections officer would shake and rattle every cell door, including the holding cell door which housed Marty Lynn Rainey to ensure the doors were secure and that the inmate was accounted for;

87. Defendants Ste. Genevieve County and Defendant Stolzer knew that Marty Lynn Rainey had the constitutional right to be free from cruel and unusual punishment, to have serious medical needs, including the suicide risk, attended to by the Defendants, and to not be deprived of life, liberty, or the pursuit of happiness without due process of law.

88. Defendants Ste. Genevieve County and Defendant Stolzer knew or should have known that failing to implement adequate policies and procedures, and failing to properly train and supervise its employees created a substantial risk to the health and safety of Marty Lynn Rainey, thus causing cruel and unusual punishment.

89. Defendants Ste. Genevieve County and Defendant Stolzer knew or should have known that its failure to implement adequate policies and procedures, and failure to properly train and supervise its employees, as described above, constituted deliberate indifference to Marty Lynn Rainey's serious medical needs including the risk of suicide.

90.   Defendants Ste. Genevieve County and Defendant Stolzer deliberately disregarded Marty Lynn Rainey's substantial medical needs including the risk of suicide by failing to put into place policies or procedures, adequately train its employees, or follow suicide risk policies and procedures already in place.

91.   As a direct and proximate result of Defendants Ste. Genevieve County and Defendant Stolzer's deliberate disregard for Marty Lynn Rainey's substantial medical needs including the risk of suicide, Marty Lynn Rainey suffered emotional harm, physical anguish and distress.

92.   As a direct and proximate result of Defendants Ste. Genevieve County and Defendant Stolzer's deliberate disregard for Marty Lynn Rainey's substantial medical needs including the risk of suicide, Plaintiffs have lost the care, companionship, services, comfort, instruction, guidance, counsel, training and support of Marty Lynn Rainey.

93.   As a direct and proximate result of Defendants Ste. Genevieve County and Defendant Stolzer's deliberate disregard for Marty Lynn Rainey's substantial medical needs including the risk of suicide, Plaintiff Estate incurred fees for funeral and burial expenses.

94.   The acts of Defendants Ste. Genevieve County and Defendant Stolzer as described above were intentional, wanton, malicious, reckless, oppressive, and callously indifferent to Marty Lynn's rights, thus entitling

24

Plaintiffs to an award of punitive damages against the Defendants.

95. If the Plaintiffs prevail and are awarded actual or nominal damages, they are entitled to an award of attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants Ste. Genevieve County and Defendant Sheriff Gary Stolzer, award them compensatory or nominal damages in an amount that is fair and reasonable, award them punitive damages, attorneys' fees, costs of suit, and any further relief the Court deems just and appropriate.

## COUNT III
### RSMo §537.080-Stolzer, Edwards, Carrow, Richie, Weinhold, Johnson and named Defendants On Duty Deputies and C.O.'s

COME NOW the Plaintiffs as Class One claimant and for Count III of her cause of action against Defendants Stolzer, Edwards, Carrow, Richie, Weinhold Johnson and named Defendants On Duty Deputies and C.O.'s states as follows:

96. Plaintiff re-incorporates, as if more fully set forth herein paragraphs 1-95.

97. The Plaintiff, Lynn Marie Rainey, the surviving spouse of Marty Lynn Rainey is a member of the first Class claimants identified in RSMo.

25

$537.080 and entitled to bring this action on behalf of the members of said Class.

98. This Honorable Court has supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. §1367 (b).

99. On information and belief Ste. Genevieve County has waived it sovereign immunity by obtaining a policy of insurance pursuant to RSMo §537.610.

100. That at all times relevant herein Defendants Stolzer, Edwards, Carrow, Richie, Weinhold and Johnson together with other named On Duty Deputies and C.O.'s were acting within the scope and course of their employment as Ste. Genevieve County's sheriff and correction officers.

101. Marty Lynn Rainey was inadequately screened and assessed when first brought to the Ste. Genevieve County Jail on March 4, 2016.

102. Defendants Stolzer, Edwards, Carrow, Richie, Weinhold and Johnson together with other named On Duty Deputies and C.O.'s knew or by the use of ordinary care should have known that Marty Lynn Rainey was suicidal.

103. At all times relevant herein Defendants Stolzer, Edwards, Carrow, Richie, Weinhold and Johnson together with other named On Duty Deputies and C.O.'s were acting within the scope and course of their employment as employees of the Ste. Genevieve County Sheriff's

26

Department.

104. Defendants Stolzer, Edwards, Carrow Richie, Weinhold and

Johnson together with other named On Duty Deputies and C.O.'s did

negligently, carelessly and recklessly:

a. failed to place Marty Lynn Rainey on suicide watch despite knowing he was a former law enforcement officer.;

b. failed to have Marty Lynn Rainey examined upon intake by a medical professional despite the fact he was found by the intake officer to be mentally ill and on prescription medications for Post Traumatic Stress Disorder (PTSD). During his 21 days at the jail Marty Lynn Rainey was not provided with his prescribed medications nor was he provided with an evaluation by a qualified medical or mental healthcare provider;

c. knew he was white, middle aged and a working father;

d. housed Marty Lynn Rainey in extreme isolation for such a long period of time—21 days—and knew or should have known this would increase his depression and despair and raise his risk of suicide;

e. placed Marty Lyn Rain in extreme isolation which, per Jail Policy, required a log of all meals, times in and out of the cell, medical visits and recreation time;

f. failed to provide a medical examination by a qualified medical professional despite the Policy mandating such at a minimum of three (3) times per week;

g. failed to follow Jail Policy which required physical face-to-face head counts;

h. failed to adequately monitor Marty Lynn Rainey in his holding cell by video camera, and allowed him to turn his lights off in his cell so such monitoring would be impossible;

105. As a direct and proximate result of the Defendants' negligence in

the execution of ministerial duties and obligations owed to Marty Lynn

Rainey, he suffered and continued to suffer great mental anguish from the

time of his incarceration until the time of his death.

106.  The aforesaid acts and omissions of the Defendants, and each of

them, directly caused, directly contributed to cause, as well as proximately

caused Marty Lynn Rainey's death.

107.  Defendants' actions constituted deliberate indifference to the

substantial medical needs, including suicide risk, of Marty Lynn Rainey as

described more fully in Count I above.

108.  The aforesaid actions and omission of the Defendants, and each of

them, directly caused and directly contributed to cause and proximately

cause the Plaintiff the loss of services, companionship, comfort, instructions,

guidance, counsel, training and support because of Marty Lynn Rainey's

death.

109. Plaintiff has suffered pecuniary losses, including but not limited

to funeral expenses because of Marty Lynn Rainey's death.

110.  The aforesaid acts and omissions of the Defendants Stolzer,

Edwards, Carrow, Richie, Weinhold and Johnson together with other

named On Duty Deputies and C.O.'s, and each of them, as described herein

above, were outrageous because of their conscious disregard and reckless

indifference to the rights of Marty Lynn Rainey thereby entitling the

28

Plaintiff and other members of her first class to an award of damages for aggravating circumstances against Defendants Stolzer, Edwards, Carrow and Johnson and each of them.

WHEREFORE the Plaintiff prays that the Court enter Judgment in Count III herein in favor of the Plaintiff for compensatory damages in an amount that is fair and reasonable, together with aggravating circumstances and damages for interest thereon, for costs herein incurred, and for other relief as the Court deems just and proper.

<u>COUNT IV</u>
**RSMo $537.080-Ste. Genevieve County and Sheriff Gary Stolzer**

COME NOW the Plaintiff as Class One claimant and for Count IV of her cause of action against Defendants Ste. Genevieve County and Sheriff Gary Stolzer state as follows:

111. Plaintiff reincorporates as if more fully set forth herein paragraphs 1 thru 64 and 95-110.

112. This Honorable Court has supplemental jurisdiction over the State law claim pursuant to 28 U.S.C. $1367 (b).

113. On information and belief Ste. Genevieve County has waived its sovereign immunity by obtaining a policy of insurance pursuant to RSMo $537.610.

114. Marty Lynn Rainey, deceased was detained and surrendered to the custody of Ste. Genevieve County Jail on March 4, 2016.

29

115. Defendants Ste. Genevieve County and Defendant Stolzer did fail to have in place adequate policies and procedures for screening and treating suicidal inmates such as Marty Lynn Rainey.

116. Defendants Ste. Genevieve County and Defendant Stolzer did fail to train and supervise its jailers in the screening of incoming inmates; including screening for serious medical needs such as suicide risks.

117. Defendants Ste. Genevieve County and Defendant Stolzer failed to follow up on the information obtained at the initial screening with Marty Lynn Rainey—that he was diagnosed with a mental illness, and was prescribed medications for Post-Traumatic Stress Disorder (PTSD). In the three weeks that Mary Lynn Rainey was housed in the Ste. Genevieve County Jail, he was not provided with his prescribed medications nor was he evaluated by a qualified medical or mental health professional to ensure proper treatment of his condition while he was incarcerated.

118. Defendants Ste. Genevieve County and Defendant Stolzer did negligently, carelessly and recklessly:

a. failed to have appropriate working policies in place to safeguard the constitutional rights of those with whom their employees came into contact with;

b. failed to adequately train its staff and employees, including Defendants Edwards, Carrow and Johnson;

c. failed to adequately supervise its employees, including Defendants Edwards, Carrow and Johnson;

30

d.  failed to have a policy in place for proper assessment of a suicidal inmate;

e. failed to have a policy wherein a suicidal inmate would be sent to a competent hospital emergency department for treatment;

f. failed to follow its written policy wherein an inmate in a holding cell would have his status reviewed by the jail staff within 72 hours of his booking/placement into the cell;

g.  failed to follow Jail Policy to allow Marty Lynn Rainey access to exercise and recreation;

h.  failed to provide Marty Lynn Rainey an examination by a qualified medical healthcare professional a minimum of three (3) times per week per policy while he was in the holding cell;

i. failed to implement monitoring or suicide precautions and failed to follow Jail Policy by preparing and maintaining a log for Marty Lynn Rainey while he was housed in extreme isolation in order to document his meals, hours out of the cell, amount of recreation time allowed and medical visits.

j.  failed to have an appropriate screening process for dealing with a suicidal inmate or detainee;

k. failed to provide an appropriate screening process for identifying the suicide risk factors associated with the arrest and incarceration of former law enforcement officer.

l.  failed to provide adequate supervision for inmates house in a holding cell/extreme isolation;

m. failed to implement its Jail Directive #1 regarding physical checks every two (2) hours whereby a corrections officer would shake and rattle every cell door, including the holding cell door which housed Marty Lynn Rainey to ensure the doors were secure and that the inmate was accounted for;

n. housed Marty Lynn Rainey in extreme isolation in a cell by himself for over 20 days thus increasing his risk for suicide—specifically by failing to place him on observation/suicide precautions per jail policy;

31

o. failed to adequately put in place policies and procedures to prevent inmate or detainee suicide; failed to train and supervise its officers on the policies and procedures in place, and/or failed to follow such suicide prevention procedures that were already in place.

119. As a direct and proximate result of the Defendants' negligence in the execution of ministerial duties and obligations owed to Marty Lynn Rainey, he suffered and continued to suffer great mental anguish from the time of his incarceration until the time of his death.

120. The aforesaid acts and omissions of the Defendants, directly caused, directly contributed to cause, as well as proximately caused Marty Lynn Rainey's death.

121. Defendants' actions constituted deliberate indifference to the substantial medical needs, including suicide risk, of Marty Lynn Rainey as described more fully in Count II above.

122. The aforesaid actions and omission of the Defendants proximately caused and directly contributed to cause and proximately caused the Plaintiff the loss of services, companionship, comfort, instructions, guidance, counsel, training and support because of Marty Lynn Rainey's death.

123. Plaintiff has suffered pecuniary losses, including but not limited to funeral expenses because of Marty Rainey's death.

124. The aforesaid acts and omissions of the Defendants Ste.

32

Genevieve County and Defendant Stolzer, as described herein above, were outrageous because of their conscious disregard and reckless indifference to the rights of Marty Lynn Rainey thereby entitling the Plaintiff and other members of her first class to an award of damages for aggravating circumstances against Defendants Ste. Genevieve County and Defendant Stolzer.

WHEREFORE the Plaintiff prays that the Court enter Judgment in Count IV herein in favor of the Plaintiff for compensatory damages in an amount that is fair and reasonable, together with aggravating circumstances and damages for interest thereon; for costs herein incurred, and for other relief as the Court deems just and proper.

BY:_/s/Stephen E. Walsh_
STEPHEN E. WALSH #24992
ATTORNEY FOR PLAINTIFF
WALSH & WALSH LLC
635 N. MAIN STREET
POPLAR BLUFF, MO. 63901
TEL: 573 712 2909-FAX 573 712 2912
swalsh@walsh-firm.com

33